IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS K,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2367 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, over three years ago in June of 2017. (Administrative Record (R.) 228-34). He claimed that he became disabled as of September 30, 2015, due to arthritic knees with ligament damage, and extensive bunion deformities. (R. 251, 255). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on March 30, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on June 1, 2020. [Dkt. #10]. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

Plaintiff was born on November 4, 1954, and so was 60 years old at the time he claims he became disabled. (R. 228). On his application, he said he had a high school education (R. 256), but stated he graduated from college at his administrative hearing. (R.49). Plaintiff has a solid work record from 1971 to 2015, with periods of unemployment in 2009 and 2012. (R. 243-44). He has worked as a claims analyst for an auto rental company, a claims specialist for an insurance company, a marketing representative in auto sales, and most recently, as a clerk in a retail store. (R. 256). The retail store job was physical work, loading supplies in a garden department, but plaintiff's other jobs were sedentary. (R. 266-71). He was laid off from that job on September 30, 2015, the date he claims his disability commenced. (R. 255).

The medical record in this case is not terribly large, as these cases go, but still covers about 400 pages. (R. 324-729). In the main, the record consists of physical therapy notes, with a couple of reports from plaintiff's treating podiatrist and orthopedic surgeon. Review of those records shows plaintiff's main issues are his feet and knees.

Plaintiff's doctor, Dr. Peopping, referred him for a course of physical therapy in April 1, 2017, to address both chronic knee problems and a recent injury to the left knee. Knee range of motion was good, but plaintiff had difficulty balancing on one leg. Orthopedic tests were negative. There were noticeable limitations in range of motion and force generation capacity of the hips. (R. 405). He was able to ambulate without a cane (R. 426), but used one for support. (R. 428). His gait was slow and cautious. (R. 428). He reported quite a bit of difficulty walking two blocks or sitting for an hour. (R. 427). Strength and range of motion were decreased in both hips. (R. 428).

On April 24, 2017, plaintiff's podiatrist, noted deformities of both feet, including hammertoes and bunions hallux valugus. (R. 505). Plaintiff reported pain in both feet, but greater on the right. (R. 505) Possible treatments were discussed, including surgery. (R. 507). Conservative treatments would have limited effect due to the severity of plaintiff's deformities, but surgery would necessitate a several-month recovery. (R, 507). Plaintiff opted for conservative treatment.

On May 23, 2017, the physical therapist noted that plaintiff's bilateral foot deformities likely contributed to his gait and balance impairments. (R. 477-79). Physical therapy notes consistently documented gait and balance disturbance. Strength and range of motion in his knees was consistently normal or nearly so; hip strength and rotation were somewhat limited. (R. 431-432, 479-481, 486-487).

On June 8, 2017, after plaintiff completed his course of physical therapy, it was noted that he had residual stiffness in his left knee, which caused difficulty walking. (R. 358). There was more pain in his right knee than his left, but the stiffness and buckling in his left knee was persistent. 9R. 358). Plaintiff also experienced stiffness after sitting for a while. (R. 470).

In March 2017, plaintiff saw Dr. Thomas Peopping, his treating orthopedic surgeon, regarding his bilateral knee pain. (R. 346). Pain was fairly minimal, but plaintiff used a cane to guard against his knee giving way. (R. 346). Dr. Peopping noted minimal tenderness on the medial aspect of the right knee and the lateral aspect of the left knee. (R. 346). Apley's sign was mildly positive for meniscus problem, but McMurray's and Lachman's were negative for tears. (R. 346). X-rays were essentially normal. (R 346). Subsequent exams in April, May, and July were all, similarly, essentially normal, with normal range of motion and minimal tenderness. (R. 344-46

On August 22, 2017, plaintiff underwent a consultative internal medicine examination in

connection with his application for benefits. Examination was essentially normal with full range of motion in the extremities, aside from limited range of motion in the left ankle and marked deformity in both feet with excessive bunions. Plaintiff limped without shoes, but walked normally with them on. He had mild difficulty heel-walking, and was able to squat to 120 degrees with mild difficulty. He was able to do single-leg weight bearing bilaterally. Strength, sensation and reflexes were all normal. (R. 365-66). An x-ray revealed mild degeneration in the lateral compartment of the right knee. (R. 369).

On November 14, 2018, Dr. Peopping, completed a physical RFC assessment for plaintiff's attorney. (R. 594-595). He reported a diagnosis of bilateral knee pain and choosing from the prognosis options of "poor, guarded, or good," checked "guarded." (R. 594). Dr. Peopping thought plaintiff could walk about six blocks without rest or severe pain, could sit for 45 minutes at a time, and could stand/walk for 30 minutes at a time. He estimated that plaintiff could sit for a total of four hours in a workday, and could stand/walk for a total of two hours in a workday. It's unclear what would happen the remaining two hours, as Dr. Peopping reported that plaintiff would not have to lie down. He felt that plaintiff would need to take unscheduled breaks four to five times in a workday for 15 minutes at a time, so he could change positions from sitting to standing. But, the doctor said plaintiff did not need a cane and did not need to elevate his legs while sitting. (R. 594). Dr. Peopping thought plaintiff would miss 3 days of work each month, and recommended that plaintiff be limited to "mainly seated work" that allowed him to "change positions as needed." (R. 595).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a medical expert and a vocational expert, the ALJ determined the plaintiff had the following

severe impairments: left foot hallux valgus, right knee degenerative joint disease, bilateral foot bunions, and left distal radius fracture. (R. 17). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listing 1.02A covering an inability to walk effectively. (R.17-19).

The ALJ then determined that plaintiff could perform a full range of sedentary work which the regulations define as:

> involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR 404.1567(a). The ALJ discussed the medical evidence and plaintiff's allegations regarding his symptoms and limitations. (R. 17-20). He found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 19). The ALJ then discussed the medical opinions from the medical expert who testified at the hearing and the plaintiff's treating doctor. The ALJ assigned "supreme persuasive weight" to the medical expert's opinion that plaintiff could perform sedentary work, and limited weight to the treating doctor's opinion that he could not. (R. 21).

Next, the ALJ, relying on the testimony of the vocational expert, found that, given his residual functional capacity, the plaintiff could perform his past work as a claims adjuster (DOT

168.267-014; skilled sedentary work). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 22).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

The substantial evidence standard is a low hurdle to negotiate, *Biestek*, 139 S. Ct. at 1154, but, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the

6

ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

As such, contrary to plaintiff's take on the review process [Dkt. #19, at 1], substantial evidence to support a conclusion exists – or doesn't – independently of the ALJ's analysis. "The court reviews judgments, not opinions." *Stephens*, 766 F.2d at 287. The question is the quality of the evidence, not the quality of the ALJ's literary skills. *Id.* Reviewers can, and often do, differ over the "traceability" of the ALJ's analysis. The ALJ need not build the Pont Neuf. A simple span will suffice so long as it allows the reviewing court to traverse the divide between the evidence and the ALJ's conclusions. *Mogg v. Barnhart*, 199 F. App'x 572, 576 (7th Cir. 2006); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Perfection is no more required in a Social Security case than in any other kind of case. *Damayanti v. Gonzales*, 209 F. App'x 601, 603 (7th Cir. 2006); *Wilcox v. Comm'r of Soc. Security*, 2018 WL 4090328, at *4 (W.D.N.Y. 2018). The ALJ's explanations here more than satisfy the obligations of *Sarchet*. In this case, there was substantial evidence to support the ALJ's conclusion, and the ALJ offered enough of an explanation for the

reviewing court to follow his reasoning and know that he considered all the important evidence.

### III.

The plaintiff contends that the ALJ committed the following reversible errors: (1) he failed to properly accommodate all of plaintiff's limitations in the RFC assessment; (2) he improperly rejected the opinion of a treating physician and accepted the claimed unsupportable testimony of a medical expert instead; and (3) he relied upon impermissible inferences to reject plaintiff's subjective symptoms. Any other arguments the plaintiff might have raised are deemed waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

### A.

According to the plaintiff, the ALJ equated an absence of listing level severity with a finding of no disability, and failed to properly accommodate all of plaintiff's limitations in the RFC assessment. The plaintiff's issue with the ALJ's decision is that the ALJ summarized all of the medical evidence before making his step 3 determination, rather than afterward, or without repeating the summary along with assessing the plaintiff's RFC. This type of complaint falls in the category of nit-picking a decision, and that is something district courts are not permitted to do when reviewing an ALJ's opinion. *See Burnam v. Colvin*, 525 F. App'x 461, 464 (7th Cir. 2013); *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir.2010); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000). Instead, the district court is charged with reading the ALJ's decision as a whole, and taking a common sense approach. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019)("The court applies a common-sense reading to the entirety of an ALJ's decision."); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

As suggested by the summary of the medical record above, the medical findings in this case are not very extensive and, for the most part, are termed as "mild" or "within normal limits." Clinical signs for knee damage are "negative." The ALJ provided a thorough summary and discussion of this evidence. The fact that he provided it in his step 3 section and did not *repeat* it in his RFC section does not detract from his reasoning. "[I]t would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five . . . ." *Rice*, 384 F.3d at 370 n.5; *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985) (refusing to require an ALJ to lay out his determinations and supporting reasoning in a "conclusion" section, as opposed to a "discussion" section, and calling any such requirement a "needless formality"); *see also Winsted*, 923 F.3d 478("But . . . the ALJ discussed these opinions throughout the decision."); *Imse v. Berryhill*, 752 F. App'x 358, 362 (7th Cir. 2018)("The ALJ based his assessment on 'the signs, symptoms, and laboratory findings' of her impairments, which he analyzed in detail throughout the opinion."). "[T]he ALJ provided the discussion of [plaintiff]'s severe and non-severe impairments, the objective medical evidence, . . . [at step 3]. This discussion provides the necessary detail to review the ALJ's [RFC] determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Capman v. Colvin*, 617 F. App'x 575, 580 (7th Cir. 2015) ("[A]n ALJ's decision should not be overturned simply because the relevant analysis is set forth at a different step of the process."). "There is no requirement of such tidy packaging, . . . ." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010)

Once one gets past the plaintiff's demand that the ALJ follow some type of Chicago Manual of Style for disability opinions, with clearly demarcated sections, it is easy to see how the ALJ

9

worked through his RFC finding. Substantial evidence – indeed, a preponderance of evidence – supports the ALJ's finding that plaintiff can still do sedentary work. As already stated, and as discussed by the ALJ (R. 17-19), examination results and physical therapy notes are, in the main, "mild" or "within normal limits." Orthopaedic tests are routinely "negative." There is nothing to suggest that plaintiff is unable to perform his past sedentary work.

Moreover, plaintiff does not point to any evidence that shows he cannot perform sedentary work, and it is his burden to do so. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, . . . ."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987)("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). The plaintiff's allegations about what he can or cannot do – such as whether he can sit and for how long [Dkt. #17, at 9-10] – are not medical evidence.

The only medical evidence the plaintiff cites [Dkt. #17, at 9, 12 (citing R. 425, 431-432, 477-79, 479-481, 486-487)] does not undermine the ALJ's decision. Instead, it provides a good example of a medical record that depicts no more than mild findings:

> April 1, 2017: Range of motion in the knee was good, range of motion in the hip was more limited. Strength in both hips was reduced, range of motion was within normal limits except for internal rotation on the right. He couldn't balance on one leg more

than three seconds. A battery of orthopaedic tests were all negative for meniscus damage. (R. 425-427)

April 18, 2017: Orthopaedic knee damages tests were all negative. Range of motion was within normal limits bilaterally. Strength was normal or 4/5. Tenderness in the right knee but none in the left. Hip strength and rotation on the right was limited as before. Cautious gait without assistive device. Considerable progress in all aspects since last visit. (R. 430-432)

May 5, 2017: No knee instability, some pain after increased exercise. Could negotiate stairs but with trepidation. Pain before physical therapy session 3/10; after physical therapy session 3/10. (R. 486-487)

May 23, 2017: No more knee buckling. Right knee continues to do well, pain in left knee at most was 4/10. Knee grind test suggested meniscus tear on left, all other knee damage test were negative. Range of motion in both knees was normal, strength was nearly normal. Some residual balance and gait issues likely due to foot structure. (R. 477-479)

May 23, 2017: same as above. (R. 479-481)

July 12, 2017: "On examination of the left knee, there is no effusion. He has full range of motion. He is neurologically intact. Examination of the right knee demonstrates some mild medial joint line tenderness. He has no effusion. He is neurologically intact." (R. 346)

The balance of the record is similar, with very limited exceptions. None of this proves the plaintiff is disabled.

**B.**

That evidence allows for a segue to the plaintiff's argument that the ALJ improperly discredited the opinion of his treating physician. Clearly, the ALJ had good reason to reject Dr. Peopping's opinion because, as the ALJ said, it was unsupported by any of his treatment notes. (R.18). Those notes, as already discussed, were, in the main, indicative of mild problems and normal clinical findings. From there, it is a great leap to find, as Dr. Peopping did, that plaintiff cannot even

11

sit for more than 45 minutes at a time, or for more than a total of four hours in a workday. ALJs have to rely on medical opinions "based on objective observations," not "subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Winsted*, 923 F.3d at 478; *Elder v. Astrue*, 529 F.3d 408, 413, 416 (7th Cir. 2008). When a physician's own notes paint a far better picture of a plaintiff's abilities than the opinion that doctor later provides for the plaintiff's disability claim, it's entirely appropriate for the ALJ to reject it. *Winsted*, 923 F.3d at 478.

Beyond that, the only other problem the plaintiff has with the ALJ's dismissal of Dr. Peopping's opinion is that the ALJ forgot he was an orthopaedic surgeon. But that's another instance of nit-picking. An ALJ does not have to recite chapter and verse through all the considerations that go into assessing a physician's opinion. *Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012); *Elder*, 529 F.3d 408, 415 (7th Cir.2008). The point of substantial evidence review is not to remand until the Agency produces a perfect opinion for the plaintiff. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

It is along these same lines that the plaintiff also complains that the ALJ improperly "undermined" his subjective symptoms. Actually, the medical record undermined plaintiff's allegations; the ALJ merely relied on that record to dismiss them. ALJs don't have to believe claimants, of course, *see, e.g., Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014)("That does not mean that the ALJ was required to credit [claimant's] testimony. The ALJ could properly have considered whether [claimant's] testimony was credible and whether the evidence supported such

12

limitations . . . .) including assessing whether the migraines were less debilitating after the stimulator implantation.") – although plaintiff's brief is so focused on plaintiff's allegations that it seems to suggest they do. [Dkt. #17, at 8-9, 15]. Claimants have an obvious incentive to exaggerate or even lie to ALJs. *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015); *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir.2006). Still, ALJs do have to support their findings sufficiently with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Their credibility findings can be overturned only if they are "patently wrong." *See Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). It cannot be said the ALJ was patently wrong here.

As already suggested, the medical record is obviously not consistent with plaintiff's claim that he cannot even sit to perform a job. Quite the contrary. The Seventh Circuit has said time and again that "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Based on the record in this case, the ALJ didn't believe plaintiff's symptoms precluded him from performing a sedentary job. That's a rationale that's easy for a reviewing court to follow, *see Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005), so there's no "logical bridge" deficiency here. Contrary to plaintiff's stance that it is a leap of logic to go from his claims that his bilateral bunions and arthritic knees result in inability to perform sedentary work, it follows directly from the medical evidence.

Also contrary to the claims in the plaintiff's brief, the ALJ did not "cherry-pick" evidence from the record [Dkt. #17, at 14]. As already made plain, the record is overwhelmingly made up of negative tests, mild findings, and results that were within normal limits. And, similarly, the ALJ did not equate the plaintiff's activities with an ability to perform full-time work. [Dkt. #17, at 14 (citing

13

R. 21)]. It's true that ALJs have been warned not to do that, *see Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), but plaintiff's argument is based on a misreading of the ALJ's opinion. But here, the ALJ said, "[o]n balance, his allegations exceed the objective and other medical evidence." (R. 21). Cases, be they Social Security or any other kind of case, are decided on the strength of the evidence properly interpreted by the trier of fact. That is what occurred here.

Overall, the tenor of plaintiff's brief certainly seems to be that mere allegations win the day. But, if allegations were all it took, then the ALJ would be superfluous; indeed the whole legal system would be. The ALJ's job would literally be, as one ALJ was woodshedded for saying, to write checks. *See Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). As the Seventh Circuit has recognized, people do lie under oath when it is to their advantage. *See Schmude v. Tricam Industries, Inc.*, 556 F.3d 624, 628 (7th Cir. 2009). That is not to say plaintiff is lying here. But the reality is that not everyone tells the truth in a trial. It is for the judge or the jury to assess the evidence. And that is exactly what the ALJ did here: The ALJ found that plaintiff's complaints were inconsistent with and out of proportion to the medical record. His conclusions rested on substantial evidence and should not be reversed.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to remand this case [Dkt. #17] is denied, and the Commissioner's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 11/9/20